On the Merits.
[2] The only remaining issue is the one of dependency.
The deceased was about 20 years of age, and, at the time of his death, was receiving $4.75 per day, working as a laborer around a well of the defendant. He was killed by being caught in a “bull rope” and dashed against the bull wheel of the well machinery which broke his neck. He was living with his father and mother, together with five other brothers, consisting of one who was nearly 17, one 15, another 12, the fourth 10, and the youngest between 8 and 9 years old.
The father was earning $5.25 per day, also as a laborer in the oil fields, looking after boilers, and the second son was earning, at similar work, the sum of $4.50 per day. The family occupied a rented house which cost $25 per month, and, while some extra rooms were fitted up for taking roomers, the returns from that source were negligible, probably not amounting to enough to cover the expense of maintenance. The mother also occasionally took orders for ladies’ corsets, but the amount earned from that source was very small, and not enough to affect the family fisc materially. The family owned no property save their personal wearing apparel, and some $200 or $300 worth of household effects.
The father and his two sons pooled their earnings, and the same were spent in paying the family living expenses, one-half or more of 'the deceased, Mark Hamilton’s, earnings going to pay grocery bills, market bills for clothing, etc., for other members of the family. In the summer prior to Mark Hamilton's death in November, the father and sons had bought, on terms of credit, a Ford automobile to be used in going to and from the oil fields some five miles distant, in order to save the expense of hiring some one else to take them there and back, or to avoid the long walk to their work. At the time of Mark’s death, a good part of the wages of the second son, Troy, was being applied to the installments on the automobile.
While it is true that, at the rate of wages which the father and his two sons were earning, the total would amount to something over $400 per month, yet it is also true that at that time, November, 1919, the *695 cost of living was abnormally high, especially in an oil field; and that sum would purchase less than half what it would have in anything like normal times. All that was earned was used for the support of the family, and, notwithstanding a most searching cross-examination and inquiry into the minutest detail of the family expenditures, it did not appear that they lived extravagantly or beyond what was reasonably appropriate and necessary to their station in life. Of course a family of eight could have existed on less than that which was earned, but we do not believe it was intended under the compensation statute that dependents should be denied its benefits, except in cases of actual want and suffering. If it were not for this statute, in the circumstances of this case, it is probable that defendant would have to pay a larger sum in damages. Those entitled to compensation under the Act do not have to be wholly dependent upon the deceased, but are allowed to recover if they are dependent “to any extent.”
We think dependency clearly existed both in law and fact, and the judgment is affirmed at appellant’s cost.
Rehearing refused by Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.